**SO ORDERED.**

**SIGNED this 25 day of January, 2011.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:                                                    CHAPTER 13
                                                          CASE NO. 05-03152-8-RDD
**MONICA ANN SEXTON,**

       **DEBTOR**

**ORDER DENYING MOTION FOR SANCTIONS**
**FOR VIOLATING DISCHARGE INJUNCTION**

Pending before the Court is the Amended Motion for Sanctions filed by Monica Ann Sexton (the "Debtor") on November 5, 2010 (the "Motion"), and the Response to Amended Motion for Sanctions filed by BRM Recovery Services Inc. d/b/a Bankruptcy Receivables Management ("BRM") on November 29, 2010 (the "Response"). The Court conducted a hearing on December 14, 2010, in Wilson, North Carolina to consider the Motion and the Response.

**BACKGROUND**

On April 18, 2005, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor's Schedule F incorrectly listed Friedman's Inc. d/b/a Friedman's Jewelers ("Friedman's") as possessing an unsecured claim. The claim was listed on schedule F in the amount of $800.00 for credit card debt. The Debtor listed the address of Friedman's in her schedules and on the creditor matrix as P.O. Box 8025, Savannah, Georgia 31412.

On June 28, 2005, the Court entered an Order Confirming the Debtor's Chapter 13 Plan (the "Original Chapter 13 Plan"). The Confirmation Order did not reference the claim of Friedman's. Subsequently, on July 3, 2005, Friedman's filed a secured proof of claim in the amount of $762.26. Of that amount, $300.00 was listed as secured with an interest rate of 7.75% and $462.26 was listed as unsecured.

On October 12, 2006, and again on March 5, 2007, the Debtor moved to modify the Original Chapter 13 Plan. Neither motion to modify referenced the claim of Friedman's. No objections were filed, and the motions were granted on November 8, 2006 and on April 4, 2007, respectively.

On October 1, 2007, the Debtor filed a Notice of Conversion to Chapter 7. The case was converted to Chapter 7. On October 31, 2007, the Debtor filed a Motion to Re-Convert her case to one under Chapter 13. This motion was subsequently granted by the Court.

Thereafter, the Debtor filed a new Chapter 13 Plan (the "Plan"), which was confirmed on April 2, 2008. The Plan provided treatment for the claim of Friedman's as secured in the amount of $300.00, with an interest rate of 7.75%, and unsecured for the balance of $462.26.

On February 4, 2008, Friedman's filed a second proof of claim in the amount of $628.17. Friedman's listed the whole amount as secured. The bar date for filing proofs of claim was August 23, 2005. The Chapter 13 Trustee filed an objection to the second proof of claim of Friedman's, on the grounds that the proof of claim was not timely filed. The Court sustained the Trustee's objection and entered an Order Disallowing Claim on March 19, 2008.

At the hearing, on December 14, 2010, counsel for BRM represented that on January 22, 2008, Friedman's itself filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code

in the United States Bankruptcy Court for the District of Delaware. Over the course of the liquidation proceeding in Friedman's, Friedman's segregated its accounts receivable and sold them.

On June 10, 2008, Merchant's Acquisition Group, LLC ("MAG") purchased a portion of the accounts of Friedman's, including the Debtor's account. A year later, on June 10, 2009, MAG placed the Debtor's account with BRM. BRM was instructed to account for the collateral, recover such collateral if appropriate, or otherwise settle and compromise any surviving in rem rights.

In compliance with the Plan's provisions, the Trustee made distributions to Friedman's based on its original proof of claim. Four checks were issued to Friedman's in connection with the $300.00 secured portion of its claim in the amounts of $50.55, $50.52, $34.98 and $52.19. Three checks were issued to Friedman's on the unsecured portion of its claim in the amounts of $13.40, $16.85 and $63.20. These payments were forwarded to the last known address of Friedman's at P.O. Box 8025, Savannah, Georgia 31412, which was the address listed in the schedules and on the proof of claim. These dividend checks were not negotiated by Friedman's. Therefore, the Chapter 13 Trustee, deposited the unclaimed funds into the court registry pursuant to 11 U.S.C. § 347(a). The funds are currently on deposit with the United States Treasury.

The Debtor completed her Plan and the Court subsequently entered an Order Discharging the Debtor on March 24, 2010.

At the hearing, counsel for BRM represented that BRM did not receive any documents in reference to the Debtor's Chapter 13 bankruptcy proceeding. For this reason, BRM sent a letter to counsel of record for the Debtor to inquire about the status of the Debtor's Chapter 13 bankruptcy case on July 1, 2010. The letter requested that Debtor's counsel contact BRM about the status of the collateral, and that if BRM did not hear from counsel's office, BRM would likely determine that

the attorney no longer represented the Debtor and would then contact the Debtor directly. The letter stated:

> [a]s a secured creditor, our client, Merchants Acquisition Group Llc (sic) still holds a contractual lien on the property used as security for this loan and has a Purchase Money Security Interest as provided by the Uniform Commercial Code, Section 9-103, in the merchandise purchased from Friedman's Jewelers described as follows: FINE JEWELRY.

Debtor's counsel failed to respond to BRM's inquiries, and as a consequence, BRM sent two letters directly to the Debtor, one dated August 17, 2010 and the other dated September 7, 2010, demanding the surrender of its collateral.

At the hearing, counsel for the Debtor testified that his office did in fact receive the letter from BRM. However, the letter identified the secured creditor as "Merchants Acquisition Group, LLC." He testified that because the "case was over" he took no action to respond to BRM"s correspondence and never communicated with his client about the letter. The Debtor testified that she received two letters from BRM, but that she never received any telephone calls from BRM regarding the surrender of the collateral.

On September 24, 2010, at the request of the Debtor, an order reopening the case was entered to allow the Debtor an opportunity to pursue a motion for sanctions.

## **DISCUSSION**

The Debtor seeks sanctions and attorney fees for violation of the discharge injunction and alleges BRM willfully violated the discharge injunction based upon letters it sent to the Debtor, after the Debtor completed bankruptcy and received her discharge on March 24, 2010.[1]

---

[1] Motion was filed as a Motion for Sanctions for Violation of the Automatic Stay. The alleged acts of BRM occurred after the entry of the Chapter 13 discharge on March 24, 2010. To conform to the evidence presented, the Court treats the Motion as one for Contempt for Violation

4

A discharge in a bankruptcy case "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2). The appropriate remedy for violation of the discharge injunction is a contempt action. *Almond v. Ford Motor Co. (In re Almond)*, 2007 WL 1345224 at *3 (Bankr. M.D.N.C. 2007). Section 524(a) may be enforced through the court's contempt power under 11 U.S.C. § 105(a). *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002).

Section 105(a) provides:

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105 allows a bankruptcy court to enter sanctions for abuse of judicial process. *In re Volpert*, 110 F.3d 494, 501 (7th Cir. 1997); *In re Rimsat, Ltd.*, 229 B.R. 914, 921 (Bankr. N.D. Ind. 1998); *Knepper v. Skekloff*, 154 B.R. 75, 80 (N.D. Ind. 1993).

To establish civil contempt, the movant must show by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*In re Adams*, 2010 WL 2721205 at *2 (Bankr. E.D.N.C.), *aff'd*, Case No. 5:10-CV-340-BR (E.D.N.C. Jan. 24, 2011) (citing Ashcraft *v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) *aff'd*, Case No. 5:10-CV-340-BR (Jan. 24, 2011)).

---

of the Discharge Injunction.

Here, BRM had knowledge of the Discharge Order docketed March 24, 2010, discharging the Debtor after completion of her Plan (the "Discharge Order"). The Discharge Order was in the Debtor's favor in that it granted the Debtor a discharge under 11 U.S.C. § 1328(a).

However, the facts do not establish by clear and convincing evidence that BRM violated the Discharge Order and had knowledge that its conduct was a violation of the Discharge Order. On July 1, 2010, BRM sent a letter to Debtor's counsel inquiring about the account of Friedman's. At the hearing, counsel for BRM stated that BRM believed that because the property was purchased pre-petition, it retained a purchase money security interest. Debtor's counsel testified that he took no action to respond to BRM's correspondence because the bankruptcy "case was over." As a result, BRM sent two letters directly to the Debtor, one dated August 17, 2010 and the other dated September 7, 2010, demanding the surrender of its collateral.

The record is replete with a morass of mistakes, including: (1) the incorrect classification of the claim of Friedman's as unsecured in the Debtor's petition; (2) the failure to include the claim of Friedman's in the Debtor's Original Chapter 13 Plan; (3) the multiple conversions of the Debtor's case; (4) the failure to docket an assignment of claims transferring the claim of Friedman's from Friedman's to MAG as a result of which checks issued by the Chapter 13 Trustee never reached or were presented for payment by the owner or assignee of the claim.

Based upon the numerous errors contained in the case record and BRM's attempt to contact Debtor's counsel to inquire about its claim and its secured rights in the collateral, the Debtor has failed to show by clear and convincing evidence that BRM had knowledge that its conduct was a violation of the Discharge Order. BRM tried to contact Debtor's counsel regarding the claim, and its effort was ignored by counsel for the Debtor.

Further, the Debtor failed to prove by clear and convincing evidence that the Debtor suffered harm as a result of BRM's conduct. At the hearing, the Debtor testified that she received two letters from BRM, but that she never received any telephone calls from BRM. She further testified that upon receiving the letters she contacted her attorney. Upon receiving notice of the Debtor's Motion for Sanctions, BRM ceased its efforts to contact the Debtor and apologized for its previous communications. The Debtor did not allege any damages other than the loss of time sustained in attending Court.

Local Rule 9011-3 allows the court to consider whether a moving party notified the offending party of its violation of the automatic stay and gave the offending party an opportunity to cure its violations prior to filing for sanctions. E.D.N.C. LBR 9011-3. Although this Local Rule is not directly applicable to the Debtor's Motion for Contempt for Violation of the Discharge Injunction under 11 U.S.C. §524(a)(2), notice and an opportunity to cure should also be required, when as here, there were numerous errors in the record in regard to BRM's treatment under the Plan and BRM made a good faith effort to contact Debtor's counsel regarding its treatment after entry of the Discharge Order. Although the Debtor incurred no damages as a result of the letters, the Debtor proceeded to file the Motion for Sanctions, without first contacting BRM and giving BRM an opportunity to cure any alleged violation of the discharge injunction. Counsel should have alerted BRM of its mistaken belief through a simple telephone call and correspondence, thereby abrogating the necessity of filing the Motion for Sanctions.

Therefore, the Motion for Sanctions for Violating the Discharge Order is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**